

SEALED BY THE ORDER OF THE COURT

KENJI PRICE #10523
United States Attorney
District of Hawaii

MICAH SMITH
Deputy Chief, Criminal Division

MARC WALLENSTEIN # 10456
Assistant United States Attorney
Room 6100, Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 824-2747
Facsimile: (808) 541-2958
E-mail: marc.wallenstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Jun 06, 2019**
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | MAG. NO. 19-00503 KJM |
| Plaintiff, | CRIMINAL COMPLAINT |
| vs. | |
| JANICE BLUMENSTEIN (01) and JOHN MUGAVERO (02), | **[FILED UNDER SEAL]** |
| Defendants. | |

## CRIMINAL COMPLAINT

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

On or about April 2018 through December 2018, within the District of Hawaii and elsewhere, defendant JANICE

BLUMENSTEIN and defendant JOHN MUGAVERO did knowingly and intentionally conspire to distribute and possess with intent to distribute fifty (50) grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A),

All in violation of Title 21, United States Code, Section 846.

    I further state that I am a Task Force Officer with the U.S. Drug Enforcement Administration ("DEA") and that this complaint is based on the following affidavit which is attached hereto and made a part of this complaint by this reference.

    DATED: June 5, 2019, Honolulu, Hawaii.

EZRA FURTADO
TASK FORCE OFFICER, DEA

Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4.1(b)(2).

**Kenneth J. Mansfield**
**United States Magistrate Judge**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Ezra Furtado, after being duly sworn, depose and say as follows:

1. I am currently a Task Force Officer with the U.S. Drug Enforcement Administration ("DEA"). I am currently assigned to the Honolulu District Office.

2. Based on the facts set forth in this affidavit, there is probable cause to believe that Janice Blumenstein and John Mugavero have violated Title 21, United States Code, Section 846.

3. From April 2018 through December 2018, a DEA Undercover Task Force Officer ("UC") was in telephonic conversation with a female who identified herself as Janice Blumenstein. The conversations centered on drug transactions whereby Blumenstein arranged multiple ounces of crystal methamphetamine to be shipped to the UC from California to Hawaii via the U.S. Postal Service, in exchange for U.S. currency. Blumenstein instructed the UC to make deposits directly into her First Hawaiian Bank ("FHB") account for the crystal methamphetamine purchases, which the UC did. FHB records confirmed the account holder as Janice Blumenstein.

4. On or about April 30, 2018, during a recorded phone call with Blumenstein, the UC agreed to purchase four (4) ounces

of crystal methamphetamine from Blumenstein in exchange for $1,850.00.

6. 5. On or about May 7, 2018, law enforcement intercepted the parcel. Subsequent analysis by the DEA Southwest Laboratory determined that the parcel contained 111.1 grams of pure methamphetamine.

6. On or about May 7, 2018, the UC telephonically contacted Blumenstein to confirm receiving the parcel. At Blumenstein's direction, the UC deposited $1,850.00 into Blumenstein's FHB account for the crystal methamphetamine.

7. On or about June 11, 2018, during a recorded phone call with Blumenstein, the UC agreed to purchase four (4) ounces of ICE from Blumenstein in exchange for $1,600.00.

8. On or about June 18, 2018, law enforcement intercepted the parcel. Subsequent analysis by the DEA Southwest Laboratory determined that the parcel contained 107.4 grams of pure methamphetamine.

9. Additionally, a latent print analysis conclusively identified fingerprints matching Janice Blumenstein on the exterior and interior parcel packaging material.

10. On or about June 18, 2018, the UC telephonically contacted Blumenstein to confirm receiving the parcel. At

Blumenstein's direction, the UC deposited $1,600.00 into Blumenstein's FHB account for the crystal methamphetamine.

12. On or about September 20, 2018, during a recorded phone call, Blumenstein and the UC negotiated a deal to purchase eight (8) ounces of crystal methamphetamine in exchange for $2,800.00. This deal was subsequently renegotiated to two (2) separate transactions, comprised of four (4) ounces per parcel shipment, totaling eight (8) ounces. The agreed purchase price was $1,400.00 per parcel shipment, totaling $2,800.00.

12. On or about September 22, 2018, Blumenstein text messaged the UC that her "guy" had mailed the parcel. The UC understood the message to mean that the approximately four (4) ounces of crystal methamphetamine had been placed in the mail.

13. On or about September 26, 2018, law enforcement intercepted the parcel. Subsequent analysis by the DEA Southwest Laboratory determined that the parcel contained 107.7 grams of pure methamphetamine.

14. On or about September 26, 2018, the UC telephonically contacted Blumenstein to confirm receiving the parcel. At Blumenstein's direction, the UC deposited $1,400.00 into Blumenstein's FHB account for the crystal methamphetamine.

15. Later that day, during a recorded telephone call with Blumenstein, the UC agreed to purchase an additional four (4)

ounces of crystal methamphetamine in exchange for $1,400.00, and agreed to deposit the money into Blumenstein's FHB account after receiving confirmation from Blumenstein that the parcel was sent.

16. On or about September 28, 2018, Blumenstein text messaged the UC stating that the parcel was mailed. The UC understood this to mean that the four (4) ounces of crystal methamphetamine negotiated on September 26, 2018 had been placed in the mail. Subsequently, the UC deposited $1,400.00 into Blumenstein's FHB account, as payment for the methamphetamine.

17. On or about October 3, 2018, the UC received the parcel. Subsequent analysis by the DEA Southwest Laboratory determined that the parcel contained 107.9 grams of pure methamphetamine.

18. On or about November 2, 2018, during a recorded phone call, the UC and Blumenstein discussed the purchase of one (1) pound of crystal methamphetamine in exchange for $4,000.00.

19. On or about November 29, 2018, during a recorded phone call, the UC and Blumenstein discussed meeting in California to conduct a one (1) pound crystal methamphetamine deal. Blumenstein confirmed the price of $4000.00.

//

//

20. On or about December 3, 2018, in a recorded phone call, Blumenstein agreed to meet with the UC in person on December 4 in West Covina, CA.

21. On or about December 4, 2018, the UC called Blumenstein's phone and a male answered stating that he was "Johnny, Blumenstein's boyfriend". "Johnny" told the UC that he would need some time to pick up the narcotics before the meet. In a follow up call from Blumenstein's phone, "Johnny" confirmed with the UC that the deal was for one (1) pound at a cost of $4,400.00.

22. On or about December 4, 2018, at approximately 8:43 P.M., the UC and "Johnny" met in West Covina, CA. "Johnny" informed the UC that the price of the narcotics was $4,400.00. They eventually negotiated the cost and agreed upon a price of $4,000.00. "Johnny" told the UC that he was responsible for the narcotics in the previously-mentioned transactions between the UC and Blumenstein. The UC understood this to mean that Blumenstein was a drug dealer and "Johnny" was her source of supply. Shortly thereafter, "Johnny" handed the UC a white colored plastic bag that contained a clear ziplock baggie with approximately one (1) pound of crystal methamphetamine. The UC then paid "Johnny" $4,000.00.

23. Subsequent analysis by the DEA Southwest Laboratory determined that the approximately one (1) pound of methamphetamine was 423 grams of pure methamphetamine.

24. In a recorded phone call shortly after the transaction, "Johnny" instructed the UC to continue to arrange transactions through Blumenstein.

25. On or about December 6, 2018, during a recorded phone call between the UC and Blumenstein, Blumenstein confirmed that "Johnny" was her boyfriend and business partner.

26. The UC positively identified "Johnny" as John Salvatore Mugavero, based on his California Driver's license photograph.

27. On or about February 12, 2019, during a recorded phone call between the UC and Mugavero, the price of future narcotics purchases were discussed. Mugavero informed the UC that the price for one (1) pound of crystal methamphetamine would be $4,000.00, or $7,000 for two (2) pounds ($3,500.00 each).

28. Based on the foregoing, there is probable cause to believe that Janice Blumenstein and John Mugavero have violated Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846 by conspiring to distribute and possess with intent to distribute fifty (50) grams or more of methamphetamine, its salts, isomers and salts of its isomers.

29. I further state that I am a Task Force Officer with the Drug Enforcement Administration (DEA) and that this complaint is based on the following affidavit which is attached hereto and made a part of this complaint by this reference.

DATED: June 7, 2019, Honolulu, Hawaii.

FURTHER AFFIANT SAYETH NAUGHT.

EZRA FURTADO
Task Force Officer, DEA

Sworn to under oath before me telephonically
and attestation acknowledged pursuant to FRCP 4.1(b)(2).



Kenneth J. Mansfield
United States Magistrate Judge